1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DIMITRIC MOSLEY,                              No.  2:16-cv-0945 WBS AC P

12                    Plaintiff,

13          v.                                      FINDINGS & RECOMMENDATIONS

14    MA, et al.,

15                    Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.

19    I.      Procedural History

20          This case proceeds on plaintiff's original complaint, which was screened and found to

21    state claims for relief against defendants Ma and Posey.[1]  ECF No. 10.  Following the close of

22    discovery, defendants filed a motion for summary judgement (ECF No. 39), which plaintiff

23    opposes (ECF No. 52).

24    II.     Plaintiff's Allegations

25          Plaintiff alleges that defendants Posey and Ma were deliberately indifferent to his medical

26    needs after he fractured his thumb when they failed to order an x-ray until several weeks post-

27

28    [1]  Defendants Dhillon, Chaiken, Lewis, and Linggi were dismissed.  ECF No. 16.

injury and failed to provide a splint or cast, resulting in a healing deformity and the onset of

Dupuytren disease.  ECF No. 1.

III.     Motion for Summary Judgment

A.     Defendants' Arguments

Defendants move for summary judgment on the ground that they were not deliberately

indifferent to plaintiff's medical condition.  ECF No. 39 at 20-22.  Specifically, they contend that

they did not disregard, delay treatment for, or fail to treat plaintiff's fractured right thumb, and

that plaintiff's difference in opinion as to the proper course of his medical care does not amount

to deliberate indifference.  Id.  Defendant Posey asserts that she provided appropriate treatment,

she saw no objective signs to suggest a fracture to plaintiff's right thumb, there is no evidence

that she knew of the fracture, and she is not qualified to diagnose a fracture.  Id. at 20-21.

Defendant Ma argues that he provided appropriate treatment and was not aware of plaintiff's

fracture until partial healing of the fracture had already begun to occur, at which time the risk of

splinting outweighed the benefits.  Id. at 21-22.  Finally, defendants assert that there is no

evidence that their treatment of plaintiff's fracture caused the development of Dupuytren's

contracture in plaintiff's hand.  Id. at 22.

B.     Plaintiff's Response

"Pro se litigants must follow the same rules of procedure that govern other litigants."

King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

*se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

"is less than voluntary" and they are subject to "the handicaps detention necessarily imposes upon

a litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v.

Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal

quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict

////

2

1  literalness" with respect to the requirements of the summary judgment rule.  Id. (citation
2  omitted).

3      Accordingly, though plaintiff has partially complied with the rules of procedure, the court
4  will consider the record before it in its entirety.  However, only those assertions in the opposition
5  which have evidentiary support in the record will be considered.

6      Plaintiff argues defendants Posey and Ma were deliberately indifferent to his right thumb
7  fracture when they denied and delayed medical treatment, resulting in significant harm.  ECF No.
8  52 at 3-25.

9      IV.    Legal Standards for Summary Judgment

10      Summary judgment is appropriate when the moving party "shows that there is no genuine
11  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
12  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden
13  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627
14  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The
15  moving party may accomplish this by "citing to particular parts of materials in the record,
16  including depositions, documents, electronically stored information, affidavits or declarations,
17  stipulations (including those made for purposes of the motion only), admissions, interrogatory
18  answers, or other materials" or by showing that such materials "do not establish the absence or
19  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
20  support the fact." Fed. R. Civ. P. 56(c)(1).

21      "Where the non-moving party bears the burden of proof at trial, the moving party need
22  only prove that there is an absence of evidence to support the non-moving party's case." Oracle
23  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
24  Indeed, summary judgment should be entered, "after adequate time for discovery and upon
25  motion, against a party who fails to make a showing sufficient to establish the existence of an
26  element essential to that party's case, and on which that party will bear the burden of proof at
27  trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element
28  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

3

1   a circumstance, summary judgment should "be granted so long as whatever is before the district

2   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

3   56(c), is satisfied."  Id.

4        If the moving party meets its initial responsibility, the burden then shifts to the opposing

5   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

6   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

7   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

8   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

9   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

10  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

11  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

12  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

13  party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

14       In the endeavor to establish the existence of a factual dispute, the opposing party need not

15  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

16  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

17  trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

18  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

19  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

20  whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

21  quotation marks omitted).

22       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

23  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

24  v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

25  opposing party's obligation to produce a factual predicate from which the inference may be

26  drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

27  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

28  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

4

1    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

2    non-moving party, there is no 'genuine issue for trial.'"  <u>Id.</u> at 587 (quoting <u>First Nat'l Bank</u>, 391

3    U.S. at 289).

4         Defendants simultaneously served plaintiff with notice of the requirements for opposing a

5    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

6    summary judgment.  ECF No. 39 at 2-3; <u>see</u> <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411 (9th Cir.

7    1988) (pro se prisoners must be provided with notice of the requirements for summary judgment);

8    <u>Rand v. Rowland</u>, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

9         V.    <u>Eighth Amendment Deliberate Indifference</u>

10        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

11   must show 'deliberate indifference to serious medical needs.'"  <u>Jett v. Penner</u>, 439 F.3d 1091,

12   1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  This requires plaintiff

13   to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

14   could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

15   (2) "the defendant's response to the need was deliberately indifferent."  <u>Id.</u>  (some internal

16   quotation marks omitted) (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

17        Deliberate indifference is a very strict standard.  It is "more than mere negligence."

18   <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994).  Even civil recklessness—failure "to act in the face

19   of an unjustifiably high risk of harm that is either known or so obvious that it should be

20   known"—is insufficient to establish an Eighth Amendment claim.  <u>Id.</u> at 836-37 (citation

21   omitted).  A prison official will be found liable under the Eighth Amendment when "the official

22   knows of and disregards an excessive risk to inmate health or safety; the official must both be

23   aware of facts from which the inference could be drawn that a substantial risk of serious harm

24   exists, and he must also draw the inference."  <u>Id.</u> at 837.  A plaintiff can establish deliberate

25   indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

26   medical need and (b) harm caused by the indifference."  <u>Jett</u>, 439 F.3d at 1096 (citing <u>McGuckin</u>,

27   974 F.2d at 1060).

28        Deliberate indifference "may appear when prison officials deny, delay or intentionally

1   interfere with medical treatment, or it may be shown by the way in which prison physicians

2   provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing

3   Estelle, 429 U.S. at 104-05).  A difference of opinion between inmate and prison medical

4   personnel—or between medical professionals—regarding the appropriate course of treatment

5   does not by itself amount to deliberate indifference to serious medical needs.  Toguchi v. Chung,

6   391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To

7   establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must

8   show that the course of treatment the doctors chose was medically unacceptable under the

9   circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

10          VI.     Objections to Plaintiff's Evidence

11          Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and

12   declarations submitted for or against a summary-judgment motion "must be made on personal

13   knowledge, set out facts that would be admissible in evidence, and show that the affiant or

14   declarant is competent to testify on the matters stated."  In other words, only admissible evidence

15   may be considered by the court.  Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th

16   Cir. 1988) (citations omitted).  "In general, inadmissible hearsay evidence may not be considered

17   on a motion for summary judgment." Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d

18   337, 345 n.4 (9th Cir. 1995) (citation omitted).  Statements in affidavits that are legal conclusions,

19   speculative assertions, or statements of hearsay evidence do not satisfy the standards of personal

20   knowledge, admissibility, and competence required by Rule 56(c)(4).  Soremekun v. Thrifty

21   Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).  However, "[a]t the summary

22   judgment stage, [the court does] not focus on the admissibility of the evidence's form.  [It]

23   instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036

24   (9th Cir. 2003) (citations omitted).  In other words, the court can consider the evidence if its

25   contents could be presented in an admissible form at trial.  Fraser, 342 F.3d at 1037.

26          Defendants Ma and Posey identify a number of statements in plaintiff's opposition which

27   they argue are inadmissible hearsay or are based on unauthenticated medical records.  ECF No.

28   57 at 11-15.  To the extent plaintiff merely quotes portions of his medical records, defendants'

6

1  objections of hearsay and lack of authentication are overruled.  Defendants do not challenge the

2  authenticity or accuracy of the records, and plaintiff would likely be capable of authenticating

3  them at trial.  Assuming authentication, the documents are not hearsay.  However, to the extent

4  plaintiff expresses his opinion regarding conclusions that can be drawn from the medical records

5  or describes details and conversations not included within his medical records, defendants'

6  objections to plaintiff's competency to provide such testimony and on hearsay grounds will be

7  sustained.  Plaintiff has not established that he is qualified to render medical opinions and he has

8  provided no evidence that he would be able to make the hearsay statements admissible at trial.

9  Accordingly, the court will disregard such statements.

10       VII.    Undisputed Facts

11            The following facts are undisputed except as noted.[2]

12            At all times relevant to the complaint, plaintiff was incarcerated in the California State

13  Prison, Sacramento (CSP-SAC).  Defendants' Undisputed Statement of Facts (DSUF) (ECF No.

14  39 at 24-38) ¶¶ 1-2.  Plaintiff has not received any formal medical training.  DSUF ¶ 6.  At the

15  times relevant to the complaint, defendant Posey was a registered nurse employed at CSP-SAC

16  and assigned to the C-Facility medical clinic, while defendant Ma was one of the primary care

17  physicians assigned to the medical clinic.  DSUF ¶¶ 7-8.

18            Plaintiff was injured on November 17, 2014, and was taken to the C-facility medical

19  office where he was examined by LVN Jordan—who prepared his medical report—and defendant

20  Posey.  DSUF ¶¶ 15-16.  If an inmate was observed to have symptoms of having sustained a

21  serious injury, a physician would be notified and/or emergency transport to an outside medical

22  facility could occur if necessary.  DSUF ¶ 14.  During the examination, plaintiff complained of

23  pain in his right hand, but Posey did not observe any swelling, discoloration, or deformity.  DSUF

24  ¶ 21.  Plaintiff also requested to see a doctor right away but was advised by Posey that the doctor

25  was seeing other patients and she could only refer him for an appointment with a doctor.  DSUF

26  _____

27  [2]  Although Local Rule 260(b) requires that the response to the moving party's statement of
undisputed facts identify which facts are admitted and which are disputed, plaintiff's response to
defendants' statement of undisputed facts identifies only facts that are disputed.  ECF No. 52 at

28  26-33.  Accordingly, those facts not addressed by plaintiff are deemed undisputed.

¶ 22.  She further advised plaintiff that he should put in a health care services request if his hand did not get better, which would result in plaintiff being seen within twenty-four hours of the request's submission.  DSUF ¶ 23.  As a registered nurse, Posey could not diagnose a medical condition, but could give impressions from a physical examination and make a referral to a physician who would then examine the patient and order any referrals necessary for diagnostic purposes.  DSUF ¶ 18.[3]

Plaintiff submitted a health care service request on November 30, 2014, stating that his hand was damaged and he needed an x-ray.  DSUF ¶ 24.  He was scheduled to attend the health clinic on December 1, 2014, but was not seen.  DSUF ¶ 25.[4]  He then put in another health care request on December 6, 2014, and was seen by Posey on December 10, 2014.  DSUF ¶¶ 26-27.  During the exam, Posey observed the color of plaintiff's right hand and wrist was within normal limits; there was no acute swelling, deformity, or redness of the joint; and that plaintiff had a limited or decreased range of motion and weak grip.  DSUF ¶ 28.[5]  Posey advised plaintiff to take over-the-counter ibuprofen for his pain symptoms and to follow up in the RN clinic in seventy-two hours if his symptoms persisted.  DSUF ¶¶ 29-30.  She also made a referral for plaintiff to see a physician on a routine basis.  DSUF ¶ 31; Response to DSUF ¶ 31.  Plaintiff claims that he was also seen by Ma on December 10, 2014, at which time Ma told him there was nothing wrong with his hand and he would see him on the doctor line.  Response to DSUF ¶ 32; ECF No. 52 at 111-12 (Plaintiff's Decl. No. 1, ¶ 3).

---

[3]  Plaintiff disputes DSUF ¶ 18 on the grounds that "Posey could have but did not refer plaintiff for x-rays" or gotten the doctor to examine him.  Response to DSUF ¶ 18.  However, he makes only general citations to his own declaration and deposition to support this claim and provides no evidence beyond his own opinion to show that Posey could have ordered an x-ray.  He further alleges that Posey told Ma about his injury and was told that Ma was busy, ECF No. 52 at 111 (Plaintiff's Decl. No. 1, ¶ 2), but provides no evidence that Posey had the ability to force the doctor to examine plaintiff immediately.  DSUF ¶ 18 is therefore deemed admitted.

[4]  Plaintiff does not dispute that he was not seen, but does dispute why he was not seen.  Response to DSUF ¶ 25.  Defendants assert that plaintiff refused to be seen, while plaintiff claims he was turned away for being late.  However, this dispute is not material to the issues before the court.

[5]  Plaintiff disputes DSUF ¶¶ 28-29 on the grounds that he told Posey his hand was broken and he needed an x-ray but she refused to treat his injury as serious and instead scheduled him on a routine basis.  Response to DSUF ¶¶ 28-29.  Plaintiff does not actually dispute any of the facts contained in DSUF ¶¶ 28-29 and they are therefore deemed undisputed.

8

Plaintiff was seen by Dr. Ma on December 16, 2014.  Response to DSUF ¶ 32; ECF No. 57 at 26.  However, defendants assert that plaintiff was seen for a cough and did not discuss his hand.  ECF No. 57 at 26.  Plaintiff states that Ma told him to rest his hand and that nothing was wrong with it, but does not otherwise specify what took place.  ECF No. 52 at 113 (Plaintiff's Decl. No. 1, ¶ 6).

Plaintiff's injury was examined again by Ma on December 24, 2014, when Ma noted prominence in plaintiff's second metacarpophalangeal joint (not at his thumb) but no bruise or deformity, and that the range of motion of the metacarpophalangeal was slightly limited, but the range of motion in the proximal interphalangeal joint and distal interphalangeal joint in that digit was normal.  DSUF ¶¶ 34-35.[6]  Ma also noted that the neurovascular function in plaintiff's hand and fingers was still intact, referred him for an x-ray due to his prominent second metacarpophalangeal knuckle, and ordered a follow up in two to three weeks after the x-ray films and results were posted.  DSUF ¶¶ 36-37, 39.

Plaintiff's x-rays were conducted on January 6, 2015, and his follow up appointment with Ma was on January 15, 2015.  DSUF ¶¶ 42, 43.  During the appointment, Ma did not have access to the actual x-ray films but reviewed the radiologists report which indicated there was no displacement and that the fracture was healing.  DSUF ¶ 45-46.[7]  Ma prepared plaintiff a treatment plan and discussed the x-ray report with plaintiff.  Id.  During the exam, plaintiff's thumb showed tenderness to palpation but no significant swelling; normal range of motion, distal

---

[6]  Plaintiff disputes DSUF ¶ 35 on the ground that he told Ma his hand was broken and in severe pain and showed him there was a deformity.  Response to DSUF ¶ 35.  Aside from disputing that there was a deformity, which plaintiff does not explain further, he does not actually dispute the facts contained in DSUF ¶ 35 and it is otherwise deemed undisputed.

[7]  Plaintiff disputes DSUF ¶ 46 and states that his fracture was not healing and that Ma was negligent because he failed to review the actual x-ray films.  Response to DSUF ¶ 46.  Plaintiff's argument that Ma was negligent in failing to review the x-ray film at his appointment does not actually dispute the facts contained in DSUF ¶ 46.  To the extent he disputes that his fracture was healing, plaintiff has not demonstrated that he is competent to provide an opinion on that issue and the records that he appears to cite do not support the conclusion that the January 6, 2015 x-ray did not show that the fracture was healing.  The March 6, 2015 radiology report states that there was "no change in the healing fracture" as compared to the February 2, 2015 x-ray, ECF No. 52 at 63, and Dr. Galang's May 26, 2015 report states that plaintiff had a healing fracture, with no reference to any particular x-rays, id. at 71.  DSUF ¶ 46 is therefore deemed undisputed.

neurovascular function, and peripheral capillary refills; and no loss of sensation.  DSUF ¶¶ 47-48.[8]  Ma felt that a splint was not necessary at that time because the fracture showed signs of healing and a cast was not felt necessary to allow for self-physical therapy without weight bearing, which would enhance circulation and promote healing.  DSUF ¶¶ 49-50.  Plaintiff was ordered for follow up in two weeks and advised to limit the use of his right hand and that he would likely have pain for another couple of months.  DSUF ¶ 51.

On January 19, 2015, plaintiff submitted a request for medical care in which he stated that he had injured his hand in November and needed to see a doctor other than Ma.  DSUF ¶ 52.  In response to the request, plaintiff was seen by Posey on January 21, 2015.  DSUF ¶ 53.  At the time of the appointment, plaintiff had already been referred to a physician and had a pending appointment.  DSUF ¶ 54.[9]  At the appointment, Posey examined plaintiff's hand and noted that he complained of pain, the color was within normal limits, there was no obvious swelling or deformity, there was full range of motion with no impaired mobility, and plaintiff had a prescription for acetaminophen.  DSUF ¶¶ 55-56.  Plaintiff was told that he could engage in activity as tolerated and instructed to follow up in the RN clinic in seventy-two hours if symptoms persisted.  DSUF ¶ 56.  Posey again referred plaintiff to a doctor and told him that was all she could do.  DSUF ¶ 57.

On January 28, 2015, Ma saw plaintiff for follow up regarding his thumb and plaintiff asserted that he was not receiving treatment or pain medication and that he was still suffering from intermittent swelling and pain.  DSUF ¶¶ 62-63.  Upon examination, Ma noted no significant swelling, slight tenderness to palpitation at the fracture sight, normal range of motion,

---

[8]  Plaintiff disputes DSUF ¶¶ 47-50 on the grounds that he advised Ma that he was in severe pain and discomfort and that his hand had an "irregularity," but Ma disregarded him by saying the fracture was healing and did not need a cast or splint.  Response to DSUF ¶¶ 47-50.  These statements do not actually dispute the facts contained in DSUF ¶¶ 47-50, which are therefore deemed admitted.

[9]  Plaintiff disputes DSUF ¶¶ 54-57 on the grounds that he told Posey his hand was getting worse, Ma was not taking his injury seriously, and he wanted to be seen by a different doctor or her supervisor, but she refused and sent him back to his cell.  Response to DSUF ¶¶ 54-57.  These statements do not actually dispute the facts contained in DSUF ¶¶ 54-57, which are therefore deemed undisputed.

and no deformity or motor or sensory deficits.  DSUF ¶ 64.  Because plaintiff had been trying to do push-ups against Ma's advice, Ma again advised plaintiff to limit activities and not put direct pressure on his first metacarpal area.  DSUF ¶ 66.  Plaintiff was also advised that he may have pain and intermittent swelling for another couple of weeks or months, for which he was already prescribed acetaminophen, and that he could purchase ibuprofen at the canteen.  DSUF ¶ 68.  Ma granted plaintiff's request for an ace bandage and ordered another x-ray to be taken in two weeks' time with a follow-up after the x-ray.  DSUF ¶¶ 69-70.[10]  Because it had been approximately nine weeks since plaintiff had injured his hand and the nondisplaced fracture was healing, Ma once again found no immobilization was needed, though plaintiff disagreed with the decision.  DSUF ¶¶ 65, 67.[11]

On February 2, 2015, plaintiff had his second x-ray, which showed that his fracture was partially healed and alignment was stable with the radiologist's impression being "healing first metacarpal fracture."  DSUF ¶¶ 71-72.[12]

On May 26, 2015, plaintiff met with Dr. Galang, an orthopedist, via telemedicine.  DSUF ¶ 73.  On examination Dr. Galang noted slight tenderness at the base of the thumb and slight abduction of the thumb with a fair grip.  DSUF ¶ 76.  Dr. Galang further noted "X-ray of the right

---

[10]  Plaintiff disputes DSUF ¶ 69 and states that Ma did not give him an ace bandage until January 28, 2015, after he informed Ma he was filing a grievance against him.  Response to DSUF ¶ 69.  Because plaintiff's statements to not actually dispute DSUF ¶ 69, it is deemed undisputed.

[11]  Plaintiff disputes DSUF ¶ 65 and cites records which he claims show there was no change or healing between the first x-ray and the March 6, 2015 x-ray.  Response to DSUF ¶ 65.  As noted above, to the extent plaintiff disputes that his fracture was healing, he has not demonstrated that he is competent to provide an opinion on that issue and the records that he appears to cite do not support the conclusion that Ma had evidence that the fracture was not healing.  The January 6, 2015 x-ray indicated the fracture was healing, and plaintiff had not yet had any further x-rays.  ECF No. 52 at 65.  Moreover, the March 6, 2015 radiology report states that there was "no change in the healing fracture" as compared to the February 2, 2015 x-ray and the reports from other doctors all state that his fracture was partially healed or healing, though the last report from April 23, 2015 noted that the fracture did not appear to have healed well.  Id. at 38-41, 63-64.  DSUF ¶ 65 is therefore deemed undisputed.

[12]  Plaintiff disputes DSUF ¶ 72 and argues that the statement is false because there was no change in his fracture from November through March 6, 2015.  Response to DSUF ¶ 72.  Plaintiff has not demonstrated that he is competent to render an opinion on this issue and the March 6, 2015 x-ray report does not support his claim as it found only that there was no change compared to the February 2, 2015 x-ray.  ECF No. 52 at 63.  DSUF ¶ 72 is therefore deemed undisputed.

1   hand/thumb shows he has a healing fracture of the base of the thumb metacarpal, nondisplaced,

2   and some callus formation.  Also has what looks like some osteophyte formation at the head of

3   the thumb metacarpal, but no fracture is seen."  ECF No. 39 at 107; DSUF ¶¶ 77-78.[13]  Dr.

4   Galang placed plaintiff in a thumb spica splint.  DSUF ¶ 79.[14]

5          Plaintiff had a third x-ray conducted on July 1, 2015, and the radiologist noted that the

6   fracture was healed with stable alignment.  DSUF ¶ 80.  Plaintiff had his spica splint removed

7   approximately one week prior to seeing Dr. Galang for follow up on July 14, 2015.  DSUF ¶¶ 81-

8   82.  Dr. Galang noted that the x-ray showed the fracture to be well-healed and in good alignment.

9   DSUF ¶ 83.  Another x-ray taken on July 14, 2015 also noted that plaintiff's thumb fracture was

10  healed and in good alignment.  DSUF ¶ 104.  On August 17, 2015, plaintiff had another x-ray

11  taken and the radiologist found "no acute fracture or dislocation" and that the fracture was healed.

12  DSUF ¶ 105.  On September 21, 2015, another x-ray was taken which found a "healed fracture

13  deformity of the base of the right first metacarpal."  DSUF ¶ 107.

14         On October 12, 2015, plaintiff was seen by Dr. Cross, who noted that plaintiff was

15  developing early Dupuytren disease, also known as Dupuytren's contracture, in the fourth ray into

16  the palm.  DSUF ¶ 109.  The fourth ray into the palm is commonly referred to as the ring finger.

17  DSUF ¶ 114.  Dupuytren disease is an abnormal thickening of the tissue beneath the skin in the

18  palm of the hand at the base of the fingers, which, over time, can cause the fingers to curl inwards

19  towards the palm.  DSUF ¶ 110.  The causes of Dupuytren disease are unknown, and while there

20  are a number of risk factors, hand trauma is not one of them.  DSUF ¶ 118.

21         Ma did not cast or splint plaintiff's thumb because immobilization devices should be

22  applied to the body part that sustained an acute injury severe enough to cause a possible fracture

23

24  [13]  Plaintiff disputes DSUF ¶ 77 on the ground that the report should say "no new fracture."
    Response to DSUF ¶ 77.  However, plaintiff has no support for this claim and, even if true, the
25  dispute is immaterial as the notes clearly indicate the fracture at issue was healing.  DSUF ¶ 77 is
    therefore deemed undisputed.
26  [14]  Plaintiff does not dispute that his thumb was placed in a splint, Response to DUSF ¶ 79, and
27  this portion of DUSF ¶ 79 is therefore deemed undisputed.  To the extent plaintiff disputes
    whether he knew why Dr. Galang placed his thumb in a splint, plaintiff's knowledge as to why
28  Dr. Galang made that decision is immaterial.

or severe muscle or ligament sprain/strain and only for a certain period of time.  DSUF ¶ 88;[15]

ECF No. 39 at 166.  An immobilization device such as a splint or cast should not be applied in

excess of the recommended period of time in order to avoid an adverse effect such as joint

stiffness and ligament contraction or spasm, which can ultimately compromise or lose the

function of the particular body part.  DSUF ¶¶ 89-90.[16]  Given the period of time between the

injury and plaintiff seeing Ma, there were two approaches to manage the fracture: (1) place it in a

splint or cast for several weeks or (2) no splint or cast and start gentle range of motion work

without weight bearing to allow for continued healing and avoid adverse effects of

immobilization.  DSUF ¶ 93.  Both approaches were medically acceptable and each had pros and

cons.  Id.  In weighing the pros and cons, Ma felt the second approach was more appropriate.

DSUF ¶¶ 94-102.[17]

VIII.   Discussion

The parties are largely in agreement as to the treatment that plaintiff received from

defendants, though there is a dispute over the date of Ma's first examination of plaintiff's injury.

However, this dispute is ultimately immaterial.  The evidence shows that plaintiff was seen in

response to his requests for health care and that defendants examined him, ordered x-rays, and

prescribed a course of treatment, including pain medication.  Plaintiff's arguments that he should

---

[15]  Plaintiff disputed DSUF ¶ 88 on the ground that Ma did not take his injury seriously and failed to view the actual x-ray film.  Response to DSUF ¶ 88.  Plaintiff is not qualified to opine that viewing the actual x-ray film would have made a difference in the treatment ordered and his conclusory assertions that Ma did not take his injury seriously are not sufficient to create a dispute of fact.  DSUF ¶ 88 is therefore deemed undisputed.

[16]  Plaintiff disputes DSUF ¶¶ 89-90 based on statements in the local operating procedures regarding immobilization of the joint and what to look for when a fracture is suspected.  Response to DSUF ¶¶ 89-91.  However, these general guidelines do not dispute defendants' statements regarding the risks of immobilization or establish the standard of care.  Furthermore, plaintiff is not qualified to provide an opinion regarding when immobilization is proper.

[17]  Plaintiff disputes DSUF ¶¶ 94-95 on the grounds that if Ma had treated him immediately there would not have been an issue and that his hand never healed properly during the delay.  He disputes DSUF ¶¶ 96-102 on ground that Ma should have looked at the actual x-ray films which showed that plaintiff's hand never healed.  Although there is a dispute as to when Ma first saw plaintiff, there is no dispute as to when Ma first discovered plaintiff had a fracture and plaintiff is not qualified to provide an opinion on the appropriate course of treatment and the medical records do not support his assertion that his fracture was not healing.  DSUF ¶¶ 94-102 are therefore deemed admitted.

13

have been treated on an urgent or emergency basis are unsupported by any evidence and establish only a disagreement as to his treatment.  Even assuming that plaintiff was seen by defendant Ma as early as December 10, 2014, he has not demonstrated that the failure to order x-rays at that time was deliberately indifferent.  Plaintiff himself states that Ma examined his hand, said that there was nothing wrong with it, and that he would see him on the doctor line.  Response to DSUF ¶ 32; ECF No. 52 at 111-12 (Plaintiff's Decl. No. 1, ¶ 3).  At best, plaintiff has demonstrated negligent misdiagnosis, which does not rise to the level of deliberate indifference.  See Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (negligent misdiagnosis does not establish deliberate indifference).

Finally, even if the court assumes that defendants knew that plaintiff's hand was fractured and failed to provide him with treatment, summary judgment is still appropriate because plaintiff cannot show that the delay in treatment caused him additional injury.  See Shapley v. Nev. Bd. of State Prison Comm'rs., 766 F.2d 404, 407 (9th Cir. 1985) (delay of surgery did not constitute deliberate indifference unless delay was harmful); Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delaying treatment does not establish deliberate indifference unless plaintiff proves delay led to further injury); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not constitute Eighth Amendment violation unless it causes "substantial harm").  Although plaintiff argues that his fracture failed to heal until he received a splint, this assertion is not supported by the evidence.  The evidence indicates that plaintiff's hand was healing properly but then stopped improving at some point after the fracture was identified; there is no evidence that the outcome would have been different had fracture been immediately identified and treated, or that immediate splinting or casting would have reduced plaintiff's pain levels.  Similarly, plaintiff has provided no evidence that his Dupuytren disease was caused by the delay.

For these reasons, defendants' motion for summary judgment should be granted.

IX.   Plain Language Summary of this Order for a Pro Se Litigant

The undisputed evidence shows that defendants Posey and Ma provided treatment for your right thumb fracture during the time that they were responsible for your care.  It is not enough that you disagreed with the treatment.  There is no evidence that defendants deliberately

14

1  ignored your medical condition, knowing that failing to do more created a serious risk of hard to

2  you.  There is also no evidence that the delay in identifying the fracture caused your additional

3  injury or led to the onset of Dupuytren disease.  Even if earlier or better treatment could have and

4  should have been provided, that would not be enough to prove deliberate indifference.  For these

5  reasons, the magistrate judge is recommending that the motion for summary judgment be granted.

6  If the district judge adopts this recommendation, there will be no trial and judgment will be

7  entered in favor of the defendants.

8                                           CONCLUSION

9         Accordingly, IT IS HEREBY RECOMMENDED that:

10        1.  Defendants' motion for summary judgement, ECF No. 39, be GRANTED.

11        2.  Judgment be entered for defendants.

12        3.  The Clerk of the Court be ordered to close this case.

13        These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

18  objections shall be served and filed within fourteen days after service of the objections.  The

19  parties are advised that failure to file objections within the specified time may waive the right to

20  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: April 1, 2022

22

23                                    ALLISON CLAIRE
                                      UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28

                                            15